HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ZACHARY BARBEE,

    Plaintiff,

v.

JEFFERSON COUNTY and STEVE RICHMOND,

    Defendants.

Case No. C05-5005 RBL

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.     Introduction**.

This matter comes before the Court on the Defendants' Motion for Summary Judgment. [Dkt. #46]. Zachary Barbee (the "Plaintiff") sued Jefferson County and Steve Richmond (the "Defendants") claiming violation of his civil rights arising from the Defendants' alleged deliberate indifference to his medical needs while he was confined at the Jefferson County Jail. The Plaintiff was booked in the Jefferson County Jail on the afternoon of September 29, 2004 as a pretrial detainee. Beginning on the morning of September 30, 2004, the Plaintiff initiated a series of requests for medical attention due to an infection that had developed in his right hand. According to the Plaintiff, the infection was severe and was causing him a significant amount of pain and discomfort. The infection in the Plaintiff's hand grew steadily worse, and he continued his requests for medical help throughout October 1 and 2, 2004. Defendant

Richmond received the Plaintiff's requests via medical request forms, as well as notifications by various corrections officers on duty on these days. On the morning of October 2, the Plaintiff was examined at sick call for approximately 5 minutes by A.R.N.P. Ken Brown, who prescribed hot towels and antibiotics. Later that same day, the Plaintiff was taken to the Jefferson General Hospital and immediately transported to Harborview Medical Center in Seattle, where he remained hospitalized for ten days. The Plaintiff underwent a number of surgeries while at Harborview, including the full amputation of one of his fingers.

**II.   Discussion.**

    **A.   Summary Judgment Standard**.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

    **B.   Defendant Richmond May Have Violated the Plaintiff's Fourteenth Amendment Rights By Exercising Deliberate Indifference to His Medical Needs.**

The constitutional question of deliberate indifference is actually two separate questions - whether the Eighth Amendment or the Fourteenth Amendment applies and whether the *Farmer v. Brennan,* 511 U.S. 825 (1994) standard is met. The Eighth Amendment's protection against cruel and unusual punishment is limited to those individuals who have been convicted of a crime. On the other hand, the Due Process Clause of the Fourteenth Amendment applies only to those individuals who have been arrested, such as pretrial detainees. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002).

1  Regardless, the *Farmer* standard is applicable in each instance.

2  Under *Farmer*, the deliberate indifference standard is satisfied if two requirements are met. First, the deprivation alleged must be "objectively sufficiently serious." *Farmer*, 511 U.S. at 834. Second, the prison official must have had a "sufficiently culpable state of mind." *Id*. And "[i]n prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* In *Gibson* the Ninth Circuit recently suggested that the protections provided to pretrial detainees by the Fourteenth Amendment may exceed those provided to convicted prisoners under the Eighth Amendment. *Id*. at 1188. The first requirement of the *Farmer* test is satisfied if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This element simply looks to the nature of the injury to see whether its effect on the inmate warrants immediate medical attention. The Plaintiff has presented evidence that indicates that the infection in his hand likely met this standard. Indeed, the Plaintiff stated in his Declaration that when he awoke on the morning of September 30, 2004 his finger was swollen to at least twice its normal size, discolored, stiff, and causing him a great deal of pain. *See* Deposition of Zachary Barbee (attached as Ex. A to the Declaration of Erik Heipt)[1], p. 21 [Dkt. #28]; *see also* Declaration of Jason Luke Headley, p. 2 [Dkt. #59]. Then, by the next morning, his finger had turned a greenish color, like there was "pus under the skin," and the pain was practically unbearable. *See* Deposition of Zachary Barbee (attached as Ex. A to the Declaration of Erik Heipt), p. 20 [Dkt. #28]. And on Saturday, October 2, 2004, Corrections Officer Fred Beck described the Plaintiff's hand as about four times as big as his other hand; the size of it was "shocking" to him. *See* Deposition of Fred Beck (attached as Ex. D to the Declaration of Erik Heipt), p. 4 [Dkt. #70].

When the Plaintiff was finally admitted to the Jefferson General Hospital late Saturday, October 2, the hospital records show that his hand was "very swollen," that the swelling had gone "to his wrist," that he had "red streaks running up" his arm, and that he was in extreme pain. *See* Deposition of Baron Brown, M.D. (attached as Ex. G to the Declaration of Erik Heipt), p. 28 [Dkt. #70]. In fact, in his Deposition the

---

[1] The Defendant contends that this Exhibit, along with Exhibits B, E, F, G, I, K, L, M, and N to Mr. Heipt's Declaration are inadmissible on the grounds that they do not contain a signed certification page from the reporter. There is no suggestion that these deposition transcripts are not authentic, and, furthermore, there is no other basis for denying their trustworthiness. The Court finds that the Defendants' motion to strike on this technical basis is unpersuasive.

ORDER
Page - 3

Plaintiff's physician, Dr. Baron Brown, described the Plaintiff's pain assessment as a nine out of ten - "pain assessment nine is circled, nine out of 10 . . . 10 being the worst that a person could imagine." *Id*. Significantly, Dr. Brown also noted that the Plaintiff's infection was an "extremely serious medical condition," and that "untreated these infections can be fatal." *Id*. at 35. Thus, leaving the Plaintiff in such a condition without proper medical attention could create a logical inference in the mind of the jury that the required "objectively sufficiently serious" risk of harm is met here.

The second requirement of the *Farmer* standard, in contrast, is subjective and focuses on the Defendant's "culpable state of mind." *Farmer*, 511 U.S. at 834. "A defendant is liable for denying needed medical care only if he 'knows of and disregards an excessive risk to inmate health and safety.'" *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (quoting *Gibson*, 290 F.3d at 1187). "In order to know of the risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [ ] he must also draw that inference.' . . . But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction." *Id*. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

In this case, a jury could find that the Plaintiff has demonstrated that Defendant Richmond was on notice of the Plaintiff's condition and his need for immediate medical attention. The Plaintiff initiated approximately thirteen verbal and written medical requests to the Defendant to be taken to the hospital. In fact, the Defendant himself viewed the Plaintiff's finger on the afternoon of September 30 and told the Plaintiff that he would have to wait to see a doctor. *See* Deposition of Zachary Barbee (attached as Ex. A to the Declaration of Erik Heipt), p. 23 [Dkt. #28]; *see also* Declaration of Jason Luke Headley, p. 3 [Dkt. #59]. Furthermore, in response to the Plaintiff's medical request on the morning of September 30, 2004, Defendant Richmond stated, "[i]t sucks to be him" and denied the request. *See* Deposition of Bradley Wohlman (attached as Ex. B to the Declaration of Erik Heipt), p. 29 [Dkt. #70]. Consequently, based upon the numerous medical requests that the Plaintiff submitted, as well as the notifications that Corrections Officers Wohlman and Maxfield provided, the Plaintiff can likely establish that Defendant Richmond was aware that the Plaintiff needed immediate medical attention for his infected hand.

Yet the Plaintiff must also establish that the Defendant inferred from this information that the Plaintiff was at a serious risk of harm if he did not receive immediate medical attention. The Plaintiff has produced evidence showing that his requests for medical attention continued throughout Friday, October 1, and Saturday, October 2, and instead of transporting him to the hospital, or even having him evaluated by a doctor, Defendant Richmond gave him hand towels and a bucket of water to treat his hand. *See* Deposition of Zachary Barbee (attached as Ex. A to the Declaration of Erik Heipt), p. 4 [Dkt. #28]. Additionally, in the early morning hours of Saturday, October 2, Officer Beck paged the registered nurse on call, Kathe Alves, to inform her that the Plaintiff's condition had grown worse, and that his hand was "swollen and infected" and was "blue and green" with "running pus." *See* Deposition of Fred Beck (attached as Ex. D to the Declaration of Erik Heipt), p. 5 [Dkt. #70]. In response, nurse Alves directed Officer Beck to promptly take the Plaintiff to Jefferson General Hospital. When Officer Beck relayed nurse Alves concerns to Defendant Richmond, Defendant Richmond then placed his own call to nurse Alves and construed the Plaintiff's injury as simply a "blood blister . . . [with] no swelling or discoloration." *See* Deposition of Steve Richmond (attached as Ex. E to the Declaration of Erik Heipt), p. 13 [Dkt. #70]. This description caused nurse Alves to change her recommendation to take the Plaintiff to the hospital. This evidence, coupled with the urgency of the Plaintiff's numerous requests, demonstrates that the jury could determine that the Defendant knew of the severity of the Plaintiff's infection and consciously disregarded the Plaintiff's need for proper medical care.

This scenario is akin to what the court was faced with in *Lolli v. County of Orange*. In that case, the plaintiff was a detainee at the Orange County Jail and suffered from diabetes. It was alleged that he was denied food and that the officers used excessive force on him while he was in detention at the jail. Although there was no direct evidence that any of the defendants knew of the risk of harm to the plaintiff from his condition, the court found that as a result of "the [plaintiff's] extreme behavior, his obviously sickly appearance, and his explicit statements that he needed food because he was a diabetic" a jury could easily find that the officers consciously disregarded a serious risk to the plaintiff's health. *Lolli*, 351 F.3d at 421. Similarly, here the Defendant could have made the inference from the Plaintiff's numerous written requests, along with the appearance of his hand, and his consistent statements that he needed to go to the hospital, that he was at a risk of serious harm if he did not receive proper and immediate medical attention.

1   Thus, viewed in the light most favorable to the non-moving party, the evidence establishes that the
2   Defendants are not entitled to summary judgment on the issue of Defendant Richmond's deliberate
3   indifference.

### C. Defendant Jefferson County's Liability Under § 1983.

Having disposed of the matter of deliberate indifference, this Court must now determine whether summary judgment is appropriate on the question of whether Defendant Jefferson County (the "County") is liable under § 1983 for its policy of denying timely medical care to inmates, and its policy of inadequately staffing the Jefferson County Jail. "In considering whether a municipality itself violated a person's rights or directed its employee to do so, the focus is on the municipality's 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Gibson*, 290 F.3d at 1187 (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978)). There are several formulations of how a plaintiff may establish municipal liability. The most recent and consistently applied test was first provided in *City of Canton v. Harris*, 489 U.S. 378 (1989), and was used by the Ninth Circuit in *Gibson v. County of Washoe*: the Plaintiff must show that (i) a County employee violated the Plaintiff's rights, (ii) the County has customs or policies that amount to deliberate indifference, and (iii) these policies were the moving force behind the employee's violation of the Plaintiff's constitutional rights, in the sense that the County could have prevented the violation with an appropriate policy. *Gibson*, 290 F.3d at 1193-94.

In order to satisfy the first prong here Defendant Richmond must have been deliberately indifferent to the Plaintiff's serious need for medical attention. And, as discussed above, this standard is met if the Defendant was aware of a substantial risk of serious harm to the Plaintiff. The Plaintiff likely meets this standard as this Court has already determined that it is possible that a jury could find that Defendant Richmond violated the Plaintiff's Fourteenth Amendment rights by ignoring his repeated requests for medical attention, delaying any proper medical evaluation for over 60 hours, and interfering with a nurse's directive to take the Plaintiff to the hospital immediately.

With regard to the second prong of the test for municipal liability, "[a] jury may infer that a municipality made a . . . deliberate choice 'when a municipal actor disregarded a known or obvious consequence of his action.'" *Gibson*, 290 F.3d at 1194 (quoting *Board of County Comm'rs v. Brown*, 520

U.S. 397, 410 (1997)). "Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Id.* at 1194-95. Unlike the deliberate indifference standard analyzed above, this standard does not contain a subjective component. *Farmer*, 511 U.S. at 841. Consequently, the Plaintiff need not prove that the Jefferson County policymakers knew that their policies here would likely result in a constitutional violation.

The Plaintiff has set forth evidence sufficient to show that a jury could determine that the County had a *de facto* policy of either denying or delaying medical care to inmates with serious medical needs. In fact, Corrections Officer Roy Munoz stated in his declaration that "[w]hen Richmond was the sergeant, and continuing nonstop after he became superintendent, it was a frequent practice at the Jefferson County Jail to unreasonably delay or altogether deny needed medical care to inmates. Requests from inmates to see a doctor or other health care professional were commonly rejected in situations where the need for medical care was real and obvious." *See* Declaration of Roy Munoz, p. 3 [Dkt. 56]. Moreover, in his deposition, Corrections Officer Bradley Wohlman described an incident where Defendant Richmond denied anti-seizure medication to a female inmate causing her to have a "full blown seizure." *See* Deposition of Bradley Wohlman (attached as Ex. B to the Declaration of Erik Heipt), p. 36 [Dkt. #70].

There is also evidence that County officials actually knew of this practice of denying medical care. For instance, prior to becoming jail superintendent Defendant Richmond served as the jail's senior sergeant and medical officer, and at that time and continuing into his tenure as superintendent, the Defendant was in charge of making all significant medical decisions relating to inmates. *See* Declaration of Roy Munoz, p. 2 [Dkt. 56]. In February 2002, the ACLU filed a class action against Jefferson County and Steve Richmond, and included in their brief 24 sworn declarations from inmates detailing the jail's denial of medical care. *See* Exhibits A-BB attached to the Declaration of Edwin Budge [Dkt. 69]. Paradoxically, the County never disciplined the Defendant, nor did it even discuss these allegations with him. *See* Deposition of Steve Richmond (attached as Ex. E to the Declaration of Erik Heipt), p. 17 [Dkt. 70]. Instead, the County promoted Richmond to the position of superintendent less than three months after the County received these declarations. Thus, a jury could find that this policy was sufficiently likely to result in the violation of a detainee's or inmate's right to medical care.

In addition, the County maintained a policy of staffing the jail with only one corrections officer

during the hours of 9 p.m. to 7 a.m, the "graveyard shift." Yet the County had long been aware that this policy too was likely inadequate and posed a real and significant danger to both officers and inmates in the facility. For example, multiple corrections officers had brought this concern to the attention of County and jail officials "numerous times" prior to October 2004. *See* Deposition of Gary Maxfield (attached as Ex. M to the Declaration of Erik Heipt), p. 13 [Dkt. 70]; *see also* Deposition of Bradley Wohlman (attached as Ex. K to the Declaration of Erik Heipt), p. 47 [Dkt. #70]. In response to these complaints, the County officials took no action and often retaliated against the officers. *See* Deposition of Fred Beck (attached as Ex. L to the Declaration of Erik Heipt), p. 5 [Dkt. #70]. The consequence of this policy, then, was that inmates who needed immediate medical care were not assisted when their need arose. Indeed, as discussed above, the Plaintiff was not taken to the hospital during the early morning hours of Saturday, October 2, 2004 simply because Officer Beck was the only one on duty that night and could not leave the other inmates.[2] The general point is that if the County maintains policies which make it obvious that a constitutional violation could occur, then a jury could find that through these policies the County was deliberately indifferent to the medical needs of its inmates.

The final element of the municipal liability test rests on whether the policies were the "moving force" behind the violation of the Plaintiff's constitutional rights. "In order to be a moving force behind [the Plaintiff's] injury, [the Court] must find that the 'identified deficiency' in the County's policies is 'closely related to the ultimate injury.'" *Gibson*, 290 F.3d at 1196 (quoting *Canton*, 489 U.S. at 391). The Plaintiff's burden is to establish "that the injury would have been avoided" had an adequate policy been in place. *Id*. For instance, if the County had a policy requiring that at least two officers be present and on duty from 9:00 p.m. until 7:00 a.m., such a policy would likely be sufficient in the sense that it is probable that the Plaintiff's injury could have been avoided here. More specifically, when the nurse directed Officer Beck to take the Plaintiff to the hospital at approximately 2:00 a.m. on the morning of October 2, Officer Beck could have left his position confident that the other inmates would be guarded, and taken the Plaintiff to the hospital. Importantly, Dr. Brown stated in his declaration that had the Plaintiff been taken to the hospital at 2:00 a.m. that morning his odds of a full recovery (without amputation of his finger) would have

---

[2] Another pretrial detainee actually lost his life, in part, because a corrections officer was alone in the jail at the time he was brought in. *See* Deposition of Brian Peterson (attached as Ex. H to the Declaration of Erik Heipt), p. 18 [Dkt. #70].

ORDER
Page - 8

been dramatically increased. *See* Deposition of Barron Brown (attached as Ex. G to the Declaration of Erik Heipt), p. 35 [Dkt. #70]. Additionally, a jury could conclude that had the County acted upon the numerous notifications suggesting that Defendant Richmond was unfit for the job of superintendent, and not hired him for that position, the Plaintiff's injury here would not have occurred. As a result, the Plaintiff has satisfied the third element of the municipal liability test for purposes of summary judgment. The evidence before the Court is sufficient to create a reasonable possibility that a jury could find that the County is liable under § 1983 for its policy of denying timely medical care to inmates, and its policy of inadequately staffing the Jefferson County Jail.

        **D.**     **Defendant Jefferson County's Liability For Negligence.**

In order to hold an employer liable for the harm caused by an incompetent or unfit employee, the Plaintiff must show that (i) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (ii) retaining the employee was a proximate cause of the Plaintiff's injuries. *Betty Y. v. Al-Hellou*, 98 Wn. App. 146, 148-149 (1999). "[T]he employer's duty is limited to foreseeable victims and then only 'to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others.'" *Id.* (quoting *Niece v. Elmview Group Home*, 131 Wash.2d 39, 48 (1997)). Here, the County owed a duty to the Plaintiff, and it is possible that a jury could find that the County knew or should have known that Defendant Richmond was unfit for the position of superintendent. As a result of a 2002 class action by the ACLU against Jefferson County and Steve Richmond, the County was well aware of allegations that the Defendant would routinely deny needed medical care to inmates, and inadequately staff the prison during the early morning hours. Consequently, a jury could determine that the County knew or should have known of the Defendant's impropriety for the job, and, furthermore, the tasks, premises, and instrumentalities entrusted by the County to Defendant Richmond were arguably what endangered the Plaintiff here.

        **E.**     **Damages.**

The Court declines to grant the Defendant's motion to prevent the Plaintiff from seeking to recover any amount of lost income or medical expenses. The Plaintiff has produced evidence indicating that he has significant hospital bills resulting from the infection to his hand.

1   The Defendants' Motion for Summary Judgment [Dkt. #46] is hereby DENIED.

3   IT IS SO ORDERED.

4   DATED this 3rd day of February, 2006.

                                                RONALD B. LEIGHTON
                                                UNITED STATES DISTRICT JUDGE